# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | |
|---|---|
| FREEMAN IRBY, | ) |
| | ) |
| Petitioner, | ) |
| | ) CAUSE NO. 3:16-CV-043 |
| vs. | ) |
| | ) |
| SUPERINTENDENT, | ) |
| | ) |
| Respondent. | ) |

## OPINION AND ORDER

This matter is before the Court on a Petition under 28 U.S.C. Paragraph 2254 for Writ of Habeas Corpus by a person in State Custody Seeking Review of a Prison Disciplinary Sanction, filed by Freeman Irby, a *pro se* prisoner, on January 29, 2016. Here, Irby challenges a disciplinary determination made by a hearing officer at the Indiana State Prison ("ISP") under case number ISP 15-09-0152. For the reasons set forth below, the court **DENIES** the petition (ECF 1). The clerk is **DIRECTED** to close this case.

BACKGROUND

On September 14, 2015, Internal Affairs Investigator Christopher Dustin prepared a conduct report charging Irby with Offense B-212 battery. The conduct report stated:

> On 9/11/2015 at approx. 5:30 pm Offender Irby reported to the Shift Supervisor's Office and spoke to Officer Bass.

-1-

> Offender Irby reported to Officer Bass that he slammed his finger in a door and severed the tip off. Investigator Dustin reviewed the camera system and found that Offender Irby was in the W1 bathroom, where he punched Offender Simmons # 993697 in the face knocking him back and down to the ground. Offender Irby then can be observed leaning over Offender Simmons and continued to strike him. Offender Irby during the assault placed his finger in the mouth of Offender Simmons who then bit down hard until the finger tip came off in his mouth. Offender Irby cause[d] physical injury to Offender Simmons leaving abbrassions [sic] on his Right cheek, temple, and eye.

ECF 7-1.

Irby was originally found guilty of this charge on September 28, 2015. ECF 7-11. But, during the administrative appeal process, the charge was vacated and case remanded for a new hearing in order for Investigator Dustin to provide some clarification of the conduct report. *Id*.

The original conduct report was used on rehearing. *Id*. On October 20, 2015, Irby was notified of the charge of battery and served with a copy of the conduct report and the screening report. ECF 7-3. The screening report reflects that he pled not guilty and requested a lay advocate. He requested a witness statement from Officer Crowe, a camera review of the incident, along with all medical records, pictures and physician's notes. *Id*.

On October 21, 2015, Investigator Dustin wrote a letter to the Disciplinary Hearing Officer ("DHO") clarifying the conduct report:

> On 9/11/2015 I was assigned case # 15-ISP-0147 where through the Investigation it was determined that Offender Irby #902344 was observed in the camera striking Offender Simmons #993697 in the West 1 bathroom, knocking offender

> Simmons to the ground and continuing to strike him (all seen on camera footage) then leave the bathroom holding his hand going to the ISO shift supervisors office where he reported that he slammed his finger in the door causing it to be severed. During the course of my investigation I interviewed Offender Simmons who gave a statement that he was in the bathroom and was attacked by Offender Irby for doing his laundry in the sink. Offender Simmons gave a recorded admission that while he was being hit by Offender Irby he bit down hard on Irby's finger and bit it off.
>
> The Conduct report for offender Irby being involved in the fight that was seen on the W1 camera leading up to his finger being severed was a summary of all the facts in the case, and at no time did I state or imply that you could see his finger being bit off from the camera. All the evidence of this case can be reviewed in the Investigation and Intelligence department Case 15-ISP-0147 so that Offender Irby would not have the information that Offender Simmons admitted to the fight and to have bit off the finger of Offender Irby.

ECF 7-2.

A statement from Officer Crowe had been obtained and presented at the original hearing; it was included in the confidential report and another one was not obtained. ECF 7-3; ECF 7-6; ECF 11 at p. 15. The DHO conducted a video review, and prepared a summary:

> Per request of inmate on this case rehearing, video was reviewed from 4:55pm until 5:35pm of the ISO W1 shower area.
>
> There was no activity in the W1 shower or dorm relating to the incident until 4:58:57. At that time a white unidentified inmate entered the bathroom & goes to the sink area—appearing to be transferring clothing to the sink. Numerous other inmates enter & exit while this inmate is at the sink. No one seems to approach him, speak to him, or approach the sink until 5:13pm when a black inmate (Irby #902344) enters. The unidentified inmate continues transferring clothes to & out of sink. Irby remains in the bathroom pacing around the sink & inmate. At 5:20:08 Irby follows the inmate that has now

-3-

moved toward the shower/dressing area. (Irby is
identified by a picture compared to the same inmate
leaving dorm with paper toweling wrapped around his
hand.)

At this time the black inmate (Irby) is observed punching
the unidentified inmate in the face. Up to this point, no
aggression is observed by the white inmate. Irby is seen
bent over the white inmate continuing to punch—it seems
the white inmate has been punched to the floor. Neither
inmate is then seen as they both are behind the wall
apparently on the floor. Both inmates then stand & go
into a fighting stance. The white inmate exits the
bathroom while Irby seems to be looking for something
(5:20:54).

Irby leaves the dorm @ 5:21:20 via around the officer
desk. He is seen with paper towel around his hand.

The white inmate returns to sink area shortly & then
again leaves while others seem to be cleaning the
altercation area.

There is no additional dorm/bathroom activity up to when
viewing stopped at 5:35pm.

Through IA investigation, the white inmate was
identified.

ECF 7-7. Irby's medical records were also obtained. ECF 11; ECF 7-8.

On October 26, 2015, the DHO held a disciplinary rehearing. ECF 7-5. At the hearing, Irby provided a statement:

My job was to clean [the] bathroom. You made it sound
like I stalked him. I'm waiting on him to move his stuff.
When I came back, he was talking crazy. You didn't see me
hitting him. You assumed. I didn't get confinement
report. I want Sgt. at hearing (IDU). Your [sic] not
impartial—you shouldn't hear the case. When did the
injuries come to him? You don't want to hear that, huh?
I sent a request for 2 people (Ofc. Taylor & Ofc. on
duty). You're digging this hole deeper & deeper.

*Id.*

At the hearing, Irby alleged that he had sent a request for statements from two other officers through prison mail a few days before the hearing. *Id*. The DHO denied those two requests because he never received them and also because the witnesses were not relevant. After the hearing, the DHO found Irby guilty of battery, in violation of B-212. She based her finding on the internal affairs investigation, the video and video summary, the incident report, the medical reports, the witness statements, the medical costs, and the seriousness of the infraction. ECF 7-5. Irby appealed to the Superintendent and Final Reviewing Authority, but those appeals were denied. ECF 7-9; ECF 7-10.

Here, Irby raises five claims in his petition: (1) he did not receive his restrictive housing report within 24 hours; (2) the DHO violated his due process rights by denying he witness requests; (3) the DHO was not impartial; (4) his due process rights were violated because he was not able to view all of the evidence; and (5) there is no evidence that he injured Offender Simmons.

## DISCUSSION

When prisoners lose earned time credits in a prison disciplinary hearing, they are entitled to certain protections under the Due Process Clause: (1) advance written notice of the charges; (2) an opportunity to be heard before an impartial decision maker; (3) an opportunity to call witnesses and present

documentary evidence in defense when consistent with institutional safety and correctional goals; and (4) a written statement by a fact finder of evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 563 (1974). To satisfy due process, there must also be "some evidence" to support the hearing officer's decision. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

First, Irby claims to be entitled to habeas relief because he was placed on restrictive housing on September 11, 2015, but did not receive his housing status report within 24 hours. While *Wolff* requires written notice of the charges 24 hours before the hearing, there is no such requirement that an inmate be given a restrictive housing report within 24 hours of being placed in restrictive housing. And, while Irby claims that the prison's internal rules or policies were violated, this would not entitle Irby to federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (habeas relief is only available for a violation of the U.S. Constitution or other federal laws); *Hester v. McBride*, 966 F. Supp. 765, 775 (N.D. Ind. 1997) (violation of prison policy in disciplinary proceeding could not support grant of habeas relief, since federal habeas court "does not sit to correct any errors of state law"). Moreover, this claim addresses his conditions of confinement – restrictive housing– not the fact or length of his custody. Thus, this claim can not be remedied in a habeas petition

pursuant to section 2554. *Preiser v. Rodriguez*, 411 U.S. 475, 498-99 (1973).

Second, Irby complains that his witness requests were denied. Irby requested Officer Crowe be at the rehearing. However, that request was denied because Officer Cowe's statement was included in the original hearing and was in the confidential case file. Though Irby wanted to cross-examine Officer Cowe at the rehearing, an inmate in a prison disciplinary hearing has no right to confront or cross-examine witnesses. *Piggie*, 342 F.3d at 666; *see also Wolff*, 418 U.S. at 556 ("Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply"). Thus, this does not warrant habeas relief.

Irby was also denied requested statements from the IDU Sergeant and Officer Taylor. The DHO denied that request because she was unaware of the requests before the hearing. It is true that untimely day of hearing evidentiary hearing requests can be denied. *Sweeney*, 113 F.3d at 720; *Hamilton*, 976 F.2d at 346-47. However, even if Irby requested those statements in a timely manner, neither officer was present at the time of the incident. So, their testimony would be irrelevant as to whether Irby committed battery. A hearing officer may deny witness or evidence requests that threaten institutional goals or are irrelevant, repetitive, or unnecessary. *Piggie v. Cotton*, 342 F.3d 660, 678 (7th Cir. 2003).

Furthermore, a hearing officer's improper exclusion of evidence will be deemed harmless unless there is some indication from the record that the evidence "might have aided [the prisoner's] defense." *Id.* at 666. Irby does not identify anything from these officers that would prove to be exculpatory or that might have aided his defense. Thus, even if the hearing officer improperly excluded these witnesses, it would have been a harmless error. Thus, he is not entitled to habeas relief on this ground.

Third, Irby complains that he was denied an impartial hearing officer. In the prison disciplinary context, adjudicators are "entitled to a presumption of honesty and integrity," and "the constitutional standard for improper bias is high." *Piggie*, 342 F.3d at 666. Due process prohibits a prison official who was personally and substantially involved in the underlying incident from acting as a decision-maker in the case. *Id.* However, due process is not violated simply because the hearing officer knew the inmate, presided over a prior disciplinary case, or had some limited involvement in the event underlying the charge. *Id.*

Here, Irby believes that the hearing officer was generally biased, but there is no indication that she was involved in any way in the events underlying the charge. He appears to believe the hearing officer was impartial because the officer made adverse rulings against him. But adverse rulings alone do not establish impermissible bias. *Liteky v. United States*, 510 U.S. 540, 555–56

(1994). Thus, this ground does not entitle him to habeas relief.

Fourth, Irby generally complains that he was not able to view all of the evidence. However, the fact that Irby did not receive the full contents of the confidential case file or view that actual video does not mean that his due process rights were violated. Indeed, the DHO is entitled to review confidential reports without disclosing them to the inmate to further institutional safety and security. *Henderson v. United States Parole Comm'n*, 13 F.3d 1073, 1078 (7th Cir. 1994); *Mendoza v. Miller*, 779 F.2d 1287, 1293 (7th Cir. 1985). Upon review of the confidential case file, the Court agrees that the materials should not be disclosed to Irby for safety and security reasons. Nor is Irby entitled to view Simmons' medical records, as those are irrelevant.

Fifth, Irby claims there was insufficient evidence to find him guilty of battery. In reviewing a disciplinary determination for sufficiency of the evidence, "courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985). A court will overturn the hearing officer's decision

only if "no reasonable adjudicator could have found [the prisoner] guilty of the offense on the basis of the evidence presented." *Henderson,* 13 F.3d at 1077. Additionally, a hearing officer is permitted to rely on circumstantial evidence to establish guilt. *See Hamilton v. O'Leary*, 976 F.2d 341, 345 (7th Cir. 1992).

Offense B-212 battery is defined as "committing a battery upon another person without a weapon or inflicting bodily injury." ECF 7 at 12. (Citing the Adult Disciplinary Process for Offenses within the Indiana Department of Corrections). In this case, it is clear that the record contains "some evidence" to support the hearing officer's determination that Irby was guilty of battery. The conduct report is some evidence that Irby battered another inmate. *McPherson*, 188 F.3d at 786 (7th Cir. 1999) (conduct report alone provided some evidence to support disciplinary determination). This is also corroborated by other evidence. The confidential case file outlines the investigation and includes Offender Simmons' statement. ECF 11. The video review establishes that a black inmate identified as Irby was observed punching a white inmate. Again, there is more than sufficient evidence to have found him guilty of battery.

Not only is there sufficient evidence to find Irby guilty of the charged offense, but there has been no showing that he was deprived any due process along the way. Based on the record, there is sufficient evidence to find Irby guilty of battery, and he has

not made a showing that his due process rights have been violated.

CONCLUSION

For the reasons set forth above, the Court **DENIES** the petition (ECF 1). The clerk is **DIRECTED** to close this case.

**DATED: April 21, 2017**       **/s/RUDY LOZANO, Judge**
                                **United States District Court**